J. S. CLARK and RUTH D. CLARK v. ALICE N. FERGUSON and DON FERGUSON, Appellants.—144 S. W. (2d) 116.

Division One, October 31, 1940.

934

*John A. Gloriod* for appellants.

*Henson & Henson* for respondents.

CLARK, J.—Appeal from the Circuit Court of Butler County. The suit is to quiet title to Lot 27 of the re-survey of Oakview Addition to the City of Poplar Bluff. The petition is in conventional form, alleging that plaintiffs are the owners in fee and in possession of the described lot; that defendants claim some title adverse to plaintiffs and praying for a decree vesting title in plaintiffs.

The answer of defendants claims fee simple title to the real estate and prays for a decree vesting title in defendants, but alleges that the property is erroneously described in the petition and that it should be described by metes and bounds as a part of Lots 25 and 26 of Oakview Addition. The answer also contains a count in ejectment.

Plaintiffs filed a reply alleging, among other things, that in 1905 one Thomas D. Ferguson, being the owner of certain described real estate, caused the same to be surveyed and platted into lots and streets as Oakview Addition, procured approval of the plat by the City Council and recorded the same in the office of Recorder of Deeds; that in 1908 the said Ferguson, being still the owner of said land, caused the same to be resurveyed, procured approval by the council of the new plat and recorded the same; that Thomas D. Ferguson died, testate, in 1911 leaving his widow, Anna Ferguson, and his son, Harry Ferguson, as the sole devisees of his real estate; that the widow renounced the will and elected to take the share of a child in the real estate; that in July, 1917, the said Harry Ferguson and wife and Anna Ferguson conveyed the lot now in suit to one Derry and wife, but erroneously described it as Lot 27 of Oakview Addition instead of Lot 27 of the re-survey of Oakview Addition; that plain-

tiffs, by mesne conveyances, are the owners of all the title of the said Fergusons; that since the date of the deed to the Derrys plaintiffs and those under whom they claim have paid all taxes, general and special, on said lot and that plaintiffs have constructed a residence thereon of the value of $7,500; the reply also alleges, by way of estoppel, that defendants' ancestor, Thomas D. Ferguson, conveyed other property in the Addition in accordance with the new plat and that all taxes, including taxes on property owned by defendants, have been assessed as described in the new plat.

Defendants moved to strike the reply on the ground it constitutes a departure from the petition. This motion was overruled and, after hearing the evidence, the court entered a decree adjudging title in the plaintiffs as prayed in their petition.

Plaintiffs' evidence abundantly sustains the allegations of their pleadings. This is not disputed by defendants, but they contend: (1) that the court erred in refusing to strike plaintiffs' reply; (2) that, on account of certain provisions of his father's will, Harry Ferguson was without power to convey and that this constitutes a fatal defect in plaintiffs' chain of title.

(1) Defendants' claim that plaintiffs' reply is a departure from their petition is expressed in defendants' motion to strike as follows: "the petition is a suit to quiet title, whereas the reply undertakes to base plaintiffs' right to recover upon the ground of estoppel and an action to reform a deed under which plaintiffs' claim is based."

We see no merit in these contentions. The reply does not contain a prayer to reform a deed. True, it alleges that "the land was erroneously described as Lot 27 of Oakview Addition . . . when the same should have been described as Lot 27 of the re-survey of Oakview Addition," but it is clear from both the petition and reply that plaintiffs are standing on the deeds as written. They claim that the last plat of Oakview Addition is an amendment to or substitute for the first plat and that all deeds were written in accordance with the last plat after it was recorded.

The evidence sustains plaintiffs in this contention. The second plat describes exactly the same land as the first plat, but rearranges the lots and lot numbers. For instance: on the first plat, Lot 27 lay on the north side of Lester Street with its longest dimensions extending east and west; while on the second plat, Lot 27 lies in the middle of the block on the south side of Lester Street, with its longest dimensions extending north and south. Lot 27 as shown on the first plat occupied the same position as the south portion of Lots 29, 30 and 31 as shown on the second plat. Lots 29, 30 and 31 "as shown on the plat of the re-survey" were sold and conveyed by defendants' ancestor long prior to the date of the deed from the Fergusons to the Derrys conveying Lot 27. So, at the date of the latter deed (upon which plaintiffs' title is based) defendants' ancestor had already parted

with the title to the property described as Lot 27 in the first plat and the only "Lot 27" which the Fergusons then owned was the lot of that number shown on the second plat. Undoubtedly that is the lot which the Fergusons intended to convey. We think that such intention is shown by the deed itself, although it described the lot as being in "Oakview Addition" instead of the "re-survey" of that Addition. There never was but one Oakview Addition. We agree with plaintiffs that the second plat is a substitute for the first plat. Since the recording of the second plat, a description of property as being in "Oakview Addition" means as such property is located in the re-survey of that Addition. Therefore, no reformation of the Derry deed was necessary.

But defendants say that Thomas D. Ferguson was without power to change the descriptions of the lots by filing the second plat. No authority is cited in support of this claim. Of course, by filing the first plat, Thomas D. Ferguson divested himself of title to the streets which were dedicated to public use and the second plat could not change the location or dimensions of such streets. The second plat did not purport to change the description of any street. It described the streets in the same way as was done in the first plat and, in addition, dedicated more land to public use in the form of alleys. We see no reason why Ferguson, being still the owner, could not rearrange and re-number the lots.

Defendants say that it was improper to plead estoppel in the reply because "estoppel is a weapon of defense and not of offense," citing City of Hardin v. Cunningham, 285 Mo. 457, 226 S. W. 872. That case does not so hold, but, even if it did, it would not help defendants. Defendants' answer is couched in substantially the same form as plaintiffs' petition. The answer sets up claim of title and asks affirmative relief. Surely plaintiffs had the right to plead estoppel against defendants' claim.

We find nothing in the reply which is inconsistent with the allegations of the petition and the court did not err in overruling defendants' motion to strike the reply. [Barron v. Wright-Dalton Co., 292 Mo. 195, 237 S. W. 786.]

(2) The will of Thomas D. Ferguson, after devising real estate to his son, Harry Ferguson, contained this clause: "but in no case shall my said son sell, mortgage or in any manner dispose of such real estate until he arrives at the age of thirty years."

Harry Ferguson joined with his mother in a general warranty deed to the Derrys on July 31, 1917. At that time he was not quite twenty-eight years of age. He was born on November 3, 1889, and became thirty years old on November 3, 1919. He lived until August 28, 1924, and the record fails to disclose that he ever attempted to disaffirm his deed. After he was thirty years old he owned and continued to pay taxes on Lot 28 adjoining the lot claimed by plain-

tiffs; and his mother, co-grantor in the deed to the Derrys, lived in the next block from said Lot 27.

Defendants, without citing any authority, say that the deed of Harry Ferguson was void as to his interest. Plaintiffs say that, while the deed may have been ineffectual when made, it passed the title inmediately on Ferguson arriving at thirty years of age without disaffirming his deed. Plaintiffs cite a number of cases holding that a warranty deed carries after-acquired title. Such rule of law is well settled and has even been applied to validate a sale of an expectancy in lands of a living ancestor. [See Johnson v. Johnson, 170 Mo. 34, l. c. 52, 70 S. W. 241.] These cases are persuasive, but not exactly in point. Here it is not a question of after-acquired title. Harry Ferguson was vested with the title at the time he executed the deed, but the will attempted to restrict his right to convey. The will vested the fee simple title in him at the death of the testator, and the weight of authority and, we think the proper rule, is that such a devise will not be cut down by an attempted restraint on alienation even for a limited time. [69 C. J., page 462, section 1525, and page 661, section 1758; McIntyre v. Dietrich, 294 Ill. 126, 128 N. E. 321.] Surely, under the facts of this case, it would be inequitable to hold the deed of Harry Ferguson void. He lived for more than four years after reaching the age of thirty and never indicated an intention or desire to avoid the deed. His heirs and devisees did not attempt to disaffirm the deed until this suit was brought in December, 1937. They lived for years in sight of Lot 27 and watched plaintiffs erect a substantial home thereon without uttering a protest or making a claim to the title.

The decree was for the right parties and we find no error in the record. Accordingly, the decree is hereby affirmed. All concur.